IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-01951-SKC-MDB

JACQUELINE ARMENDARIZ and
CHINOOK CENTER,

     Plaintiffs,

v.

CITY OF COLORADO SPRINGS,
DANIEL SUMMEY, in his individual capacity,
B.K. STECKLER, in his individual capacity,
JASON S. OTERO, in his individual capacity,
ROY A. DITZLER, in his individual capacity,
FEDERAL BUREAU OF INVESTIGATION, and
UNITED STATES OF AMERICA.

---

## ORDER ON MOTIONS TO DISMISS (DKTS. 49, 50, 51, 52)

---

Before the Court are four separate motions to dismiss the First Amended

Complaint (FAC). Dkts. 49, 50, 51, and 52.[1] The FAC alleges six claims for relief. Dkt.

12. The first Motion to Dismiss is by Defendants Daniel Summey, the Federal Bureau

of Investigation, and the United States. Their Motion (Dkt. 49) seeks dismissal of

Claims 1, 4, and 6. The second Motion to Dismiss is by Defendant Roy Ditzler. His

---

[1] The Court uses "Dkt. __" to refer to entries from the CM/ECF electronic docket. All references to page numbers within an electronic docket entry are to the page number found in the CM/ECF blue-font header.

Motion (Dkt. 50) seeks dismissal of Claims 1 and 4, and he also joins in the first Motion to Dismiss. The third Motion to Dismiss is brought by Defendants B.K. Steckler and Jason Otero. Their Motion (Dkt. 51) seeks dismissal of Claims 2, 3, and 5. The fourth and final Motion to Dismiss is brought by Defendant City of Colorado Springs. Its Motion (Dkt. 52) seeks dismissal of Claims 1, 2, and 3.

The Motions to Dismiss are all fully briefed. The Court requested additional briefing related to the individual law enforcement defendants' claims of qualified immunity. Dkt. 93. The Court has carefully considered the Motions and their full briefing, the additional briefing submitted in compliance with the Court's order, and relevant legal authorities. No hearing is necessary.

As explained in detail below, because the FAC fails to plausibly allege a constitutional violation, the First and Second Claims for Relief are barred against Defendants Summey, Ditzler, Steckler, and Otero, based on their qualified immunity. Those claims correspondingly fail against the City because there can be no municipal liability in the absence of a constitutional violation. The Third Claim for Relief against Defendants Steckler, Otero, and the City fails for similar reasons considering the FAC's failure to plausibly plead a constitutional violation regarding the Facebook Warrant. The Sixth Claim for Relief against Defendant FBI fails because the FAC does not plausibly plead a Fourth Amendment violation for the return of copies of records obtained with a lawful search warrant. And because all the federal law claims fail, the Court declines to exercise supplement jurisdiction over the state law claims—

Claims 4 and 5, and the Court additionally lacks subject matter jurisdiction over Claim 4 as asserted against the United States. The Motions to Dismiss are thus GRANTED.

## BACKGROUND

This background is taken from the well-pleaded factual allegations in the FAC, which the Court accepts as true and views in the light most favorable to Plaintiffs. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). The individual defendants are all law enforcement personnel employed by Defendant City of Colorado Springs. The Court sometimes refers to Defendants Summey, Steckler, Otero, and Ditzler as the Law Enforcement Defendants or LEDs. The case arises out of the LEDs' actions following a housing rights march in Colorado Springs on July 31, 2021. Dkt. 12 at ¶3. Plaintiff Chinook Center and several other groups helped organize the march. *Id.* Plaintiff Jacqueline Armendariz marched at the event, along with prominent Chinook Center members and other activists concerned about the local housing crisis. *Id.*

Ultimately, a commander from the Colorado Springs Police Department ordered arrests of prominent Chinook Center members for marching in the street even after they complied with police requests to move onto the sidewalk. *Id.* at ¶¶4, 40. The arrests included Chinook Center leader Shaun Walls who had been at the front of the march carrying a white flag with the Chinook Center logo. *Id.* at ¶41.

Plaintiff Armendariz was also eventually arrested. During the march, she was walking her bicycle in the bike lane near the front of the march when police tackled Walls, which she witnessed. *Id.* at ¶42. When she saw another officer in riot gear running towards her, she dropped her bike. *Id.* The bike landed between her and the officer. *Id.* The officer avoided the bike and continued toward the protestors. *Id.* The encounter was captured on multiple police body-worn cameras and a police department overhead drone. *Id.*

Although officers did not arrest Armendariz at the scene, they subsequently decided that dropping the bicycle in front of the officer was a case of felony attempted aggravated assault on a police officer, identified as Officer Anthony Spicuglia. *Id.* at ¶43. Defendant Summey was assigned the task of identifying the person who committed the alleged offense. *Id.* at ¶57. He pored over officer body worn camera, drone footage, and conducted multiple internet searches. *Id.* He found photographs and other information showing that Armendariz was the person who dropped her bike in front of the officer at the housing march. *Id.* He also found information indicating that she had been politically active and had some connection to the Chinook Center. *Id.*

On August 6, 2021, Summey submitted an affidavit to obtain an arrest warrant for Armendariz. *Id.* At the same time, he submitted, and Defendant Ditzler approved, an affidavit to obtain a search warrant to search Armendariz's home and seize the items they determined she was wearing or using at the housing march. *Id.* at ¶¶160,

162, 200; *see also* Dkt. 49-1. The warrant included the seizure of all "digital media storage devices" associated with Armendariz, including all "phones, computers, tablets, thumb drives, and external hard drives" found in her home. Dkt. 12 at ¶88; Dkt. 49-1 at p.18. When officers arrested Armendariz outside her home on August 18, 2021, they searched her home and seized items specified in the warrant. Dkt. 12 at ¶¶89-94.

On August 20, 2021, after conclusively determining that Armendariz was the person who dropped her bike in front of the officer at the rally, Summey submitted a second affidavit to obtain a warrant to search Armendariz's three cell phones, her two computers, and her external hard drive. *Id.* at ¶95. Summey's affidavit to search the devices repeated the litany of conclusions from his arrest affidavit and his affidavit to seize the devices, but also added more, including specified key words to use to search the electronic devices. *Id.* at ¶¶95-96. Ditzler reviewed and approved Summey's warrant application and affidavit for the search of Armendariz's devices. *Id.* at ¶¶160, 162, 200.

The police department enlisted the help of the FBI to search, seize, and copy Armendariz's electronic devices. *Id.* at ¶¶126-28. The FBI continues to retain copies of the data. *Id.* at ¶129. Armendariz ultimately reached a plea agreement for obstructing a peace officer, received a deferred judgment, and successfully served six months of unsupervised probation. Dkt. 12 at ¶119.

As for Plaintiff Chinook Center, a few days after the housing demonstration, police sought a search warrant for "All Facebook Messenger chats tied" to the Chinook Center Facebook page. Dkt. 12 at ¶45; *see also* Dkt. 51-1. Steckler drafted, and Otero reviewed and approved, the affidavit submitted to the state district court in support of the warrant. Dkt. 12 at ¶55. The warrant was served on Facebook, which complied with it. *Id.* at ¶56.

Plaintiffs bring six claims for relief, asserted as follows:

| PLAINTIFF | CLAIM | DEFENDANTS |
|---|---|---|
| Armendariz | **First Claim for Relief:** unlawful search and seizure in violation of First and Fourth Amendments; 42 U.S.C. § 1983 | Summey Ditzler City of Colorado Springs |
| Chinook Center | **Second Claim for Relief:** unlawful search and seizure in violation of First and Fourth Amendments; 42 U.S.C. § 1983 | Steckler Otero City of Colorado Springs |
| Chinook Center | **Third Claim for Relief:** unlawful search in violation of Stored Communications Act | Steckler Otero City of Colorado Springs |
| Armendariz | **Fourth Claim for Relief:** Deprivation of Rights in violation of Colo. Const. Art. II §§ 7, 10, 24; Colo. Rev. Stat. § 13-21-131 | United States[2] Ditzler |
| Chinook Center | **Fifth Claim for Relief:** Deprivation of Rights in violation of Colo. Const. Art. II §§ 7, 10, 24; Colo. Rev. Stat. § 13-21-131 | Steckler Otero |

---

[2] In a prior order (Dkt. 62), the Honorable Magistrate Judge Maritza Dominguez Braswell granted the United States' Motion to substitute itself as a party for Summey as to Claim 4.

6

| Armendariz | **Sixth Claim for Relief:** injunctive relief under First[3] and Fourth Amendments; 5 U.S.C. § 702 | FBI |

## LEGAL PRINCIPLES

## A.    Motions under Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While the Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movant, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (cleaned up).

The *Twombly/Iqbal* pleading standard requires courts to take a two-prong approach to evaluating the sufficiency of a complaint. *Iqbal*, 556 U.S. at 678–79. The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* at 678. The second prong requires the court to

---

[3] *See infra* n.9.

assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Conclusory allegations are those that express "a factual inference without stating the underlying facts on which the inference is based." Black's Law Dictionary (11th ed. 2019); *see also Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (Conclusory allegations fail to apprise defendants "of the conduct that forms the basis of the charges against them."); *Morris v. Thaler*, 425 F. App'x 415, 421 (5th Cir. 2011) (Conclusory allegations are "vague, lacking in specifics, or amount to mere recitations of the relevant legal standards without any supporting factual narrative.").

## B.   Qualified Immunity

Qualified immunity shields individual defendants in Section 1983 actions unless their conduct was unreasonable based on clearly established law. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (quotation omitted). The court has discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Raising the qualified immunity defense with a motion under Rule 12(b)(6) subjects the defendant to a more challenging standard than what applies at the summary judgment stage. *Id.* "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* (cleaned up). The court must consider whether the facts alleged in the complaint plausibly allege a violation of a constitutional right, and whether the right at issue was clearly established. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

And because the Section 1983 claims here involve allegations of unconstitutional search and seizure warrants obtained and executed by law enforcement, the Court may also consider the warrants and their supporting affidavits because these documents are alleged in the FAC, they are central to Plaintiff's Section 1983 claims, and no party has raised a dispute about their authenticity. *See N. Arapaho Tribe v. Becerra*, 61 F.4th 810, 814 (10th Cir. 2023). Any "factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir.1997).

"Qualified immunity applies equally to reasonable mistakes of law and fact." *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014). When a defendant raises qualified immunity in defense of an unlawful search and seizure claim, courts examine whether the defendant violated clearly established law by determining whether the officer's conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. *Id.* at 1141. This is known as "arguable probable cause." *Id.* A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed for the search or seizure. *Id.*

Further, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). But the inquiry doesn't end there. Qualified immunity should not be granted when the officer seeking the warrant misrepresented or omitted material facts to the judge rising to the level of a deliberate falsehood or reckless disregard for the truth. *Stonecipher*, 759 F.3d at 1142. Or, when it is obvious no reasonably competent officer would have concluded a warrant should issue, such as when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt*, 565 U.S. at 547 (internal quotations and citation omitted). But the threshold to establish the latter is high—the Supreme Court has explained that in the ordinary course, "an officer cannot be

expected to question the magistrate [judge]'s probable-cause determination" because it is the judge's "responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* (quoting and citing *United States v. Leon*, 468 U.S. 897, 921 (1984)).

## ANALYSIS

Plaintiffs sued Summey, Steckler, Otero, and Ditzler, each in their individual capacity for their respective roles in securing one or more of the warrants alleged in the FAC. The LEDs each claim qualified immunity on Plaintiffs' First and Fourth Amendment claims (Claims 1 and 2). The Court first addresses application of qualified immunity to the Fourth Amendment claims.

**A.    Qualified Immunity and the FAC's Fourth Amendment Claims**

**1.    Summey and the Armendariz Warrants**

The Court first considers whether the FAC plausibly alleges Summey violated a constitutional right by obtaining and executing Warrant 1 (home search and seizure) and Warrant 2 (device search and seizure). Because the Court finds the FAC fails to plausibly allege a constitutional violation respecting Summey and the Armendariz Warrants, he is entitled to qualified immunity.

The Fourth Amendment's warrant requirement provides "no Warrants shall issue, but upon probable cause," and a warrant must "particularly [describe] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The

warrant must "describe the things to be seized with sufficient particularity to prevent a 'general, exploratory rummaging in a person's belongings.'" *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). The Fourth Amendment also requires "the scope of the warrant be limited to the specific areas and things for which there is probable cause to search." *United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988).

Whether probable cause exists is a "flexible, common-sense standard, and no single factor or factors is dispositive." *United States v. Knox*, 883 F.3d 1262, 1275 (10th Cir. 2018) (cleaned up). It "is not a high bar: It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up). Generally, a reviewing court should give great deference to a neutral judge's determination of probable cause who approved the warrant. *See United States v. Leon*, 468 U.S. 897, 914 (1984).

Probable cause exists only when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). There must be a "nexus . . . between suspected criminal activity and the place to be searched." *United States v. Mora*, 989 F.3d 794, 800 (10th Cir. 2021) (quoting *United States v. Biglow*, 562 F.3d 1272, 1278 (10th Cir. 2009)). A finding of probable cause also considers the totality of the information in any affidavit attached to, and incorporated into, the warrant. *See United States v. Suggs*, 998 F.3d 1125, 1135 (10th Cir. 2021).

### a.   Violation of a Constitutional Right

The Court has examined Warrants 1 and 2 and Summey's supporting affidavits. *Eckert v. Dougherty*, 658 F. App'x 401, 411 n.1 (10th Cir. 2016) (taking judicial notice of warrant application and search warrant, even though they were not submitted by the plaintiff, to review a motion to dismiss based on qualified immunity); *Rathbun v. Montoya*, 628 F. App'x 988, 990 n.2 (10th Cir. 2015) (considering motion to dismiss based on qualified immunity and drawing facts from the search warrant and supporting affidavit referenced in the amended complaint). The Court finds the Armendariz Warrants have sufficient indicia of probable cause and particularity to support their issuance and execution.

Warrant 1 is a packet consisting of a completed Application and Affidavit for Search Warrant, Attachment A ("Affidavit 1"), and Attachment B which lists the items to be seized. Dkt. 49-1. According to Affidavit 1, Summey was investigating Armendariz for a violation of Colo. Rev. Stat. § 18-2-101, criminal attempt – second degree assault (a class five felony), for her alleged attempted assault of Officer Spicuglia with her bicycle. *Id.* at p.17. Summey was tasked with helping detectives identify "a female that attempted to strike [Officer Spicuglia] with a bicycle as he ran to assist other police officers who were attempting to take Shaun Walls into custody." *Id.* at p.4.

Warrant 1 sought entry into Armendariz's home to search and seize property that was or had "been used as a means of committing" the crime or that "[w]ould be

material evidence in a subsequent criminal prosecution[.]" *Id.* at 49-1 at pp.1, 2. More specifically, and in pertinent part, it sought the seizure of "Digital media storage devices, to include phones, computers, tablets, thumb drives, and external hard drives found to be associated with Jacqueline Armendariz." *Id.* at p.18.

Affidavit 1 describes Summey's observations of the alleged assault as seen from another officer's body camera and it contains multiple still photo images of the alleged assault from drones or other cameras. *Id.* at pp.4-10. The affidavit also describes Summey's identification of Armendariz through her active use of multiple social media sites, to include Facebook, a personal Twitter handle, a professional Twitter profile, and LinkedIn. *Id.* at pp. 11-15. Her Facebook post from July 3, 2021, includes what appears to be a "selfie" of Armendariz while wearing the same or similar bicycle gear she wore during the protest leading to her arrest. Dkt. 49 at p. 12; Dkt. 49-1 at p.11. The affidavit also describes her association with Shaun Walls, who was the individual Officer Spicuglia was running to arrest when Armendariz is alleged to have attempted to assault the officer with her bicycle. *Id.* at p.10.

The Court finds this information alone establishes probable cause for the search and seizure of the items listed in Warrant 1. As concerns Armendariz's digital devices that were the subject of Warrant 1, based on the evidence of her use of social media, her social media connection to Walls, the selfie she took and posted to Facebook days before the protest while out on her bike, and her other various posts referencing her social activism, it was reasonable for Summey to believe there was

probable cause that material evidence for use in a subsequent prosecution of the alleged crime would be found on those devices. *See Messerschmidt*, 565 U.S. at 1248-49 (noting the Fourth Amendment allows a search for evidence that will aid in a particular conviction such as evidence that helps to establish motive); *Andresen v. Maryland*, 427 U.S. 463, 483-84 (1976) (although a warrant authorized only search and seizure of evidence relating to a crime involving one described property lot, the seizure of documents pertaining to another lot in the same subdivision was allowed because it was relevant to the target's intent to defraud); *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 3749449, at *17 (N.D. Cal. Sept. 22, 2010) ("Certainly, the Ginn affidavit established that there was probable cause to seize cell phone records in relation to the Estrada homicide—records that may have offered insight into the motive, execution, cover-up, and publicity of the homicide.").

Warrant 2 is also comprised of an Application and Affidavit for Search Warrant, Attachment A ("Affidavit 2"), and Attachment B which lists the items to be seized. Dkt. 49-2. Affidavit 2 contains all the information from Affidavit 1, in addition to a description of the items law enforcement seized from their execution of Warrant 1. And in the Affidavit 2, Summey indicates he learned that Armendariz sent her employer digital media of the protest. *Id.* at p.19.

Affidavit 2 also contains averments about Summey's claimed awareness of the "Chinook Center [as] an anarchist or anti-government organization" whose members have promoted protests that turned violent in the past; purported ties between

Armendariz and the Chinook Center and its founders, including Walls; numerous descriptions of Walls' social activism including his calling for "violence against police officers and their families;" and a "pattern of protest activity that has turned illegal associated with the Chinook Center and Chinook Center member organizations." Dkt. 49-2 at pp.20-27.

> Summey also stated the following in Affidavit 2:
>
> Your Affiant would note that Walls actively resisted arrest, and it appears Armendariz attempted to assault a uniformed police officer at (sic) protest march that was sponsored by Chinook Center that turned unlawful. Your Affiant would note there appears to be a close relationship that exists between Walls and Armendariz, wherein they are friends on social media, Armendariz attended an event that Walls promoted on social media, and she attempted to assault an officer who was attempting to take Walls into custody.

*Id.* at p.25. Summey sought permission to search the digital devices recovered from Armendariz's person and residence during the execution of Warrant 1, and to seize "any photos, videos, messages (Whether they be text messages or any application on the phone or computer capable of sending messages) emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this investigation." *Id.* at p.27. He claimed this "time period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer." *Id.*

He also requested permission to perform a key word search of the devices using specified terms stating "these terms would be relevant to the investigation regardless of the time period in which they occurred:" "Police, officer, cop, pig, bike, bicycle,

attack, assault, 150th, celebration, protest, housing, human, right, yt, Chinook, Center, Jon, Jonathan, Sam, Samantha, Christiansen, Shaun, Walls[.]" *Id.* at pp.27 and 29.

The Court also finds Warrant 2 was supported by arguable probable cause for the search of the specified electronic devices and using the proposed search terms. *See Stonecipher*, 759 F.3d at 1141 ("Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."). The factual averments Summey lays out in both warrants are colored by his descriptions of what he either knows from, or has encountered based on, his training and experience, which is an appropriate consideration bearing on probable cause. *See, e.g.*, *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009) ("Our reading of the scope of the 'computer records' subject to search, narrowing it to looking for drug related evidence, comes from the text of the warrant . . . coupled with the specifics of the supporting affidavit[.]"); *United States v. Spruell-Ussery*, No. 22-cr-20027-01, 2023 WL 7696546, at *6 (D. Kan. Nov. 15, 2023) (officer's professional experience may serve as a source of probable cause). And notably, both warrants experienced two levels of approval, first by Summey's supervisor and then by a neutral judicial officer who found probable cause and signed the warrants. Dkt. 49-1 at p.1; Dkt. 49-2 at p.2; *Messerschmidt*, 565 U.S. at 555 ("The fact that the officers secured these approvals is certainly pertinent in

assessing whether they could have held a reasonable belief that the warrant was supported by probable cause.").

Both warrants also meet the particularity requirement. The purpose of particularity "is to establish practical guidelines about what can be searched and seized, leaving nothing to the discretion of the officers executing the warrant." *United States v. Palms*, 21 F.4th 689, 698 (10th Cir. 2021). The Fourth Amendment requires warrants for computer searches to "affirmatively limit the search to evidence of specific . . . crimes or specific types of material." *Id.* (cleaned up). But "practical accuracy rather than technical precision" is what matters. *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009) (internal quotations and citations omitted). For example, search warrants need not identify a specific criminal statute under investigation for them to possess the requisite particularity. *Palms*, 21 F.4th at 698-99. Nor do warrants involving computer searches have to contain "a particularized computer search strategy." *United States v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005).

Warrants 1 and 2 are sufficiently particular. Both attached and incorporated by reference Affidavits 1 and 2, respectively. Dkt. 49-1 at p.1; Dkt. 49-2 at p.1. Both Affidavits referenced the specific criminal statute under investigation—*i.e.*, Colo. Rev. Stat. § 18-2-101. Dkt. 49-1 at p.17; Dkt. 49-2 at p.18; *cf. Palms*, 21 F.4th at 698–99 ("To be sufficiently particular, search warrants do not have to identify specific statutes for the crimes to which they are limited."). Warrant 1 identified the specific

residential premises to be searched and requested the seizure of specific items listed in Attachment B and "used as a means of committing a criminal offense" or that would be "material in a subsequent criminal prosecution[.]" Dkt. 49-1 at pp.1, 17 ("The above mentioned items would be material evidence in the subsequent prosecution of Armendariz for attempting to assault Officer Spicuglia."), 18.

Warrant 2 identified six different electronic devices seized during the first search and requested to seize from those devices "material evidence in a subsequent criminal prosecution[.]" Dkt. 49-2 at p.1. And Warrant 2 is limited to a three-month period (6/5/2021 to 8/7/2021) for the seizure of certain tangible items and uses specified key words to limit the forensic search of the seized electronic devices. *Palms*, 21 F.4th at 698 ("Such a broad authorization is permissible under our precedent, so long as the warrant contained some 'limiting principle.'") (citing *United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017)). The supporting affidavit, Affidavit 2 sought permission to perform a key word search of the seized devices using at least 24 specified search terms. *Id.* at p.28. Its Attachment B listed those key words and noted no time frame applied to the key word search because "these terms would be relevant to the investigation regardless of the time period in which they occurred." Dkt. 49-2 at p.29. Attachment B also listed tangible items to be seized, including: "Photos, videos, messages (Whether they be text messages or any application on the phone or computer capable of sending messages) emails, and location data, for the time period of 6/5/2021 through 8/7/2021 that are determined to be relevant to this

investigation. This time period would allow for any planning leading up to the crime, the period when the crime took place, and the subsequent taking of credit for committing a violent act against a police officer." *Id.*

Plaintiff raises Summey's arguably self-serving descriptions of certain facts and events in his supporting affidavits—such as his references to "illegal" protest activity; his positing that red flags symbolize socialism and communism; his conclusion that Armendariz uses "yt" to disparage white people; and his conclusion that Armendariz is "active politically"—to argue these demonstrate the unlimited bounds of the Warrants. *See generally* Dkt. 60. But those descriptions and characterizations, whether or not accurate or self-serving, are not material to the finding of probable cause or particularity for the reasons stated above. *See also Messerschmidt*, 565 U.S. at 546 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.") (cleaned up).

For these reasons, the FAC fails to plausibly allege a violation of the Fourth Amendment against Summey, entitling him to qualified immunity. *See Eckert*, 658 F. App'x at 401 (affirming trial court's dismissal of Section 1983 Fourth Amendment claim and finding of qualified immunity where facts described in affidavit supporting search warrant amounted to probable cause).

### b.    A Clearly Established Right

To be sure, even assuming there was a violation of Armendariz's Fourth Amendment rights, the Court agrees with Summey that Plaintiff has failed to discern any clearly established law. Plaintiff has not adduced Tenth Circuit or Supreme Court precedent, or a clear weight of authority from other courts, clearly establishing that an officer violates the Fourth Amendment when they specify a criminal statute under investigation in a search and seizure warrant, include limiting principles in the warrant around the criminal statute or criminal conduct under investigation, and have that warrant approved first by a supervisor and second by a neutral judicial officer who found probable cause.

The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). This means the law cannot merely be implicated by applicable precedent; instead, "the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (cleaned up); *see also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) (Supreme Court precedent does not require a case directly on point but does require a case that places the constitutional question beyond debate; the inquiry is in the specific context of the case and not general propositions). This level of specificity is particularly important in Fourth Amendment cases where it is "'sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer

confronts.'" *City of Tahlequah*, 595 U.S. at 12-13 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (the clearly established right must be defined with specificity particularly in the Fourth Amendment context); *D.C. v. Wesby*, 583 U.S. 48, 64 (2018) ("While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate.") (cleaned up).

Armendariz argues in her Response that her "right to be free from unreasonable searches and seizures was clearly established when Defendants prepared and obtained the warrants at issue." Dkt. 60 at p.24. No doubt. But this formulation defines the clearly established right at the too-high-level of generality the Supreme Court shuns. *City of Tahlequah*, 595 U.S. at 12. The right at issue in this case is more particularized. *City of Escondido, Cal.*, 139 S. Ct. at 503; *D.C.*, 583 U.S. at 64.

This is principally true when considering Supreme Court and Tenth Circuit precedent holding that "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in 'objective good faith.'" *Messerschmidt*, 565 U.S. at 546 (2012); *see also Stonecipher*, 759 F.3d at 1142-43. This is particularly apt where, as here, there is insufficient pleading that the officer who sought the warrant misrepresented or omitted material facts to the judge rising to the level of a deliberate

falsehood or reckless disregard for the truth, or that the warrant was so obviously lacking in probable cause that no reasonably competent officer would have concluded a warrant should issue. *See Messerschmidt*, 565 U.S. at 547; *Stonecipher*, 759 F.3d at 1142-43; *see also Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. [T]he challenger's attack must be more than conclusory[.]").

Based on the above, Armendariz has failed to show Summey's conduct violated clearly established law, further entitling him to qualified immunity on the First Claim for Relief. *See Cuervo v. Salazar*, No. 20-CV-0671-WJM-GPG, 2021 WL 1534607, at *9 (D. Colo. Apr. 19, 2021) (dismissing Fourth Amendment claim where plaintiff failed to demonstrate defendants violated a clearly established right in conducting the search of her property and thus failed to meet her burden to overcome the defense of qualified immunity).

### 2. Ditzler and the Armendariz Warrants

Defendant Ditzler reviewed and approved Warrants 1 and 2 prior to their approval by the judges.[4] Dkt. 12 at ¶¶160-63. The FAC fails to plausibly allege a

---

[4] The FAC inconsistently pleads that Steckler approved one or more of the Armendariz Warrants. *Compare* Dkt. 12 at ¶¶87, 113 (referring to Steckler's approval), *with* ¶¶160-63, 200 (referring to Ditzler's approval). But the inconsistency is of no matter because the documents themselves show they were approved by Ditzler. Dkt. 49-1 at p.3 (initialed by "RAD"); Dkt. 49-2 at p.5 (same); *see also* Dkt. 50 n.1.

constitutional violation against him for the same reasons discussed above concerning Summey. Thus, Ditzler also enjoys qualified immunity.

### 3. Steckler and the Chinook Facebook Warrant

The Court has examined the Facebook Warrant and Steckler's supporting affidavit. Dkt. 51-1. The Facebook Warrant is a packet consisting of a completed Application and Affidavit for Search Warrant, Attachment A ("Steckler Affidavit"), and Attachment B which lists the items to be seized. *Id.* The Facebook Warrant attaches and incorporates the Steckler Affidavit and Attachment B by reference. *Id.* at p.1.

According to the Steckler Affidavit, Steckler was investigating arrests made for "Obstructing Passage or Assembly, and Resisting, Interference with a Public Official" that occurred during a protest involving approximately 60 individuals on July 31, 2021. Dkt. 51-1 at p.3. He received an "anonymous tip" on August 2, 2021, regarding a Facebook post from the date of the protest under the name of Shaun Walls (who was arrested). The following day Steckler "became aware" of two more Facebook profiles "that had bearing on this case." *Id.* at p.4. One of the profiles contained pictures and videos from the protest and included photos of Walls being arrested. *Id.*

Detective Granillo alerted Steckler to the second Facebook profile, which was under the name Chinook Center and "in which the protest was organized under the events tab." *Id.* Steckler went to Chinook's Facebook page and "was able to see details

regarding a 'March for Housing' set for 07/31/21 . . . ." *Id.* Steckler went on to aver he believed "the information gained from the two Facebook profiles will be material evidence in this case. It is your affiant's experience people involved in illegal demonstrations use social media to organize planned events. It is your affiant's belief the demonstration was organized prior to 07/31/21." *Id.*

His affidavit cites 18 U.S.C. § 2703 as the basis for his warrant request, and Steckler avers that "specific and articulable facts have been shown to reasonably believe the target [Facebook URL], service provider, Facebook, Inc., for which records are being sought is of relevant interest in the offense shown." *Id.* Attachment B identifies the items to be seized as:

> All subscriber information tied to Facebook profile: https:www.facebook.com/chinookcenter to include names, phone numbers, and addresses.
>
> All Facebook posts for profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.
>
> All Facebook Messenger chats tied to Facebook profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.
>
> All Facebook Events for profile: https:www.facebook.com/chinookcenter from 07/27/21 to 08/02/21.

*Id.* at p.5. And the warrant states there is probable cause to believe the information to be seized "[w]ould be material evidence in a subsequent criminal prosecution[.]" *Id.* at p.1.

Steckler sought the Facebook Warrant under 18 U.S.C. § 2703(c), which allows a governmental entity to "require a provider of electronic communication service or

remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity" either obtains a search warrant or a court order for disclosure. *See* 18 U.S.C. § 2703(c)(1)(A) (regarding a warrant); *id.* §§ 2703(c)(1)(B) (regarding a court order for disclosure). The latter is a lower standard than the probable cause required for issuing a warrant. *United States v. Herron*, 2 F. Supp. 3d 391, 401 (E.D.N.Y. 2014); *United States v. Cooper*, No. 13-CR-00693-SI-1, 2015 WL 881578, at *4 n.3 (N.D. Cal. Mar. 2, 2015); *United States v. Mack*, No. 3:13-CR-00054 MPS, 2014 WL 6085306, at *1 (D. Conn. Nov. 13, 2014).

Under either standard, the Court finds the Facebook Warrant meets it. After Walls and others were arrested during the protest on July 31, 2021, Steckler was investigating "Obstructing Passage or Assembly, and Resisting, Interference with a Public Official" related to those arrests. He had evidence of Walls' and others' use of Facebook to post information about the July 31 protest that resulted in multiple arrests, including evidence that Chinook organized and had details about the protest on the events tab on its Facebook account. On these facts alone, it was objectively reasonable for Steckler to believe there was probable cause that material evidence for use in a subsequent prosecution(s) involving those arrested would be found within the subscriber information, posts, messenger chats, and events tab of the Chinook Facebook profile.

The Facebook Warrant is also sufficiently particular. It is limited to evidence involving specific arrests for specific infractions all occurring on July 31, 2021, and Attachment B further limits the information sought to a seven-day period of July 27 to August 2, 2021. *Matter of Search of Kitty's E.*, 905 F.2d at 1374 (stating "there is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized.") (internal quotations and citation omitted). And like the Armendariz Warrants discussed above, Steckler presented the Facebook warrant first to a supervisor for approval and second to a judge who reviewed and approved the warrant, finding probable cause. Dkt. 51-1; Dkt. 12 at ¶177.

For these reasons, the FAC fails to plausibly allege a violation of the Fourth Amendment against Steckler entitling him to qualified immunity. In the alternative, Chinook has also failed to adduce clearly established law for the reasons discussed above regarding the Armendariz Warrants.

### 4.   Otero and the Facebook Warrant

Defendant Otero reviewed and approved the Facebook Warrant prior to its submission to the judge. Dkt. 12 at ¶177. The FAC fails to plausibly allege a constitutional violation against him for the same reasons discussed above concerning Steckler. Thus, Otero also enjoys to qualified immunity.

**B.    Qualified Immunity and the FAC's First Amendment Claims**

The FAC alleges the Armendariz and Facebook Warrants also violated the First Amendment. It alleges the warrants were obtained as an action of retaliation against Plaintiffs and that the warrants swept up "First Amendment-protected information" and "expressive and associational materials." Dkt. 12 at ¶¶151-52, 172-73.

To establish a § 1983 retaliation claim alleging a violation of the First Amendment, a plaintiff must plead and prove (1) she was engaged in a constitutionally protected activity; (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's actions were substantially motivated as a response to her exercise of her First Amendment speech rights. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). In the paradigm of cases involving alleged retaliatory arrests or retaliatory prosecutions based on the First Amendment, the Supreme Court has held the lack of probable cause is also a required element of these retaliation claims. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723-25 (2019) (retaliatory arrest); *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006) (retaliatory prosecution). Other district courts have applied this requirement to pleading claims for retaliatory searches. *See Chavez v. City of Albuquerque*, No. 13-cv-557, 2014 WL 12796875, at *3 (D.N.M. Apr. 14, 2014) ("[T]he Court believes that the reasoning set forth in *Hartman* applies equally to this situation. . . . Therefore, . . . a plaintiff claiming that a search

warrant was executed in retaliation for a protected activity is required to show a lack of probable cause as an element of that claim."); *see also Hall v. Putnam Cnty. Comm'n*, No. 22-cv-0277, 2024 WL 559603, at *10 (S.D.W. Va. Feb. 12, 2024).

The Court finds these authorities persuasive and agrees that the reasoning in *Hartman* for requiring pleading the lack of probable cause in a retaliatory prosecution case applies equally to a claim of a retaliatory search especially where, as here, the searches were conducted based on warrants approved by neutral judicial officers.[5] *Hartman*, 547 U.S. at 261-62 (discussing the absence of probable cause is a necessary showing in part because "the defendant will be a nonprosecutor, an official, like an inspector here, who may have influenced the prosecutorial decision but did not himself make it[.]"); *see also Nieves*, 139 S. Ct. at 1725 (discussing the need for a showing of the absence of probable cause in a retaliatory arrest case in part because "policing certain events like an unruly protest would pose overwhelming litigation risks. Any inartful turn of phrase or perceived slight during a legitimate arrest could land an officer in years of litigation.").

---

[5] The cases Plaintiffs rely on for the proposition that warrants must describe the things to be seized with "scrupulous exactitude" pertain to situations where the basis for the search and seizure was the ideas or speech itself. *See Stanford v. Texas*, 379 U.S. 476, 485 (1965); *Matter of Search of Kitty's E.*, 905 F.2d 1367, 1372–73 (10th Cir. 1990). The FAC here fails to plausibly plead the basis of the warrants in this case was in and of itself the ideas, speech, or associations of either Plaintiff versus the alleged criminal statutes or criminal conduct under investigation.

For the reasons discussed above, the FAC fails to plausibly plead the absence of probable cause regarding the Armendariz and Facebook Warrants.[6] *Frey v. Town of Jackson*, 41 F.4th 1223, 1238 (10th Cir. 2022) ("Even accepting Plaintiff's allegations as true that retaliatory animus motivated officers in whole or in part when they prolonged Plaintiff's detention, probable cause still supported the detention."). The FAC's numerous allegations that the warrants lacked probable cause are conclusory, particularly after this Court's review of the warrants. *GFF Corp.*, 130 F.3d at 1385 ("factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true.").

---

[6] The Court requested additional briefing from the parties (Dkt. 93) regarding a case they did not discuss which appeared to the Court may be applicable to the matters at hand. Dkt. 93 (citing *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642 (10th Cir. 1988). The parties' submissions were appreciated and informative. But based on the Court's analysis herein, it has determined *Pueblo Neighborhood Health Centers* is not applicable to the circumstances of this case. *See, e.g., Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997) ("We have held in our discussion of plaintiffs' constitutional claim that plaintiffs' inference of subjective bad faith in the officers' omission of information from the affidavit does not eliminate the officers' ability to rely on a valid warrant supported by probable cause."); *see also Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("Our cases have repeatedly rejected this approach [of considering officers' subjective motivations]. An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify [the] action." (cleaned up; emphasis and bracketed text in original); *New York v. P.J. Video, Inc.*, 475 U.S. 868, 875 (1986) ("We think, and accordingly hold, that an application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally.").

Nor does the FAC allege any similarly situated individuals were treated differently than either or both Plaintiffs. *See, e.g., id.* at 1232 ("[W]hen pursuing a claim for retaliatory arrest against a law-enforcement officer, a plaintiff must plead either that the officer lacked probable cause to arrest or that the officer historically has not arrested similarly situated people who were not engaged in the same type of speech.") (citing *Nieves*, 139 S. Ct. at 1726-27). Indeed, it in fact appears to allege the opposite. *See* Dkt. 12 at ¶¶130-47.

For these reasons, the FAC fails to allege a plausible violation of the First Amendment by the LEDs, further entitling them to qualified immunity on the First and Second Claims for Relief, respectively.

## C.     The City's Municipal Liability Re: the First and Fourth Amendments

Plaintiffs' First and Second Claims for Relief as against the City are based on a theory of municipal liability. Dkt. 12 at ¶¶130-47, 165, 182; *see Monell v. Department of Social Services*, 436 U.S. 658 (1978). Because the Court has found the FAC fails to plausibly allege a constitutional violation by the LEDs, it necessarily means the FAC fails to state plausible First and Fourth Amendment claims against the City. *Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("It is well established . . . that a municipality cannot be held liable under section 1983 for the acts of an employee if [the] employee committed no constitutional violation.").

## D.      Third   Claim   for   Relief   Alleging   a   Violation   of   the   Stored
        Communications Act (SCA)

Based on this Court's above-conclusion and analysis that the Facebook

Warrant was supported by sufficient probable cause under 18 U.S.C. § 2703(c), and

thus, the FAC fails to state a plausible constitutional violation respecting that

warrant, Chinook's Third Claim for Relief fails to state a plausible claim. *See Davis*

*v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997) (where a valid warrant authorized

seizure of computer equipment, officers were entitled to the good faith defense under

18 U.S.C. § 2707(e), as a matter of law, for their reliance on the warrant). The

Plaintiffs cite no authority to suggest the SCA imposes requirements more

demanding than the Fourth Amendment.[7] *See, e.g., id.* ("The plaintiffs have not

persuaded us the statute imposes a requirement stricter than the Fourth

Amendment[.]")

## E.      Sixth Claim for Injunctive Relief

Armendariz asserts this claim against the FBI.[8] Aside from incorporating

previous allegations in the FAC by reference, the Sixth Claim reads, in its entirety:

---

[7] This is true even when considering the FAC's allegations that Chinook received no
prior notice of the Facebook Warrant. The judge who issued the warrant did so under
18 U.S.C. § 2705(b), which allows the government to apply for, and the court to issue,
an order delaying notification of the existence of a warrant. Dkt. 51-1; 18 U.S.C. §
2705(b); see also 18 U.S.C. 2703(b)(1)(B)(ii) ("except that delayed notice may be given
pursuant to section 2705 of this title").

[8] In her Response to the City's Motion to Dismiss, Armendariz suggests Claim 6 is
also brought against the City. Dkt. 61 at p.16 ("Plaintiffs acknowledge that the
headings of their state constitutional and injunctive relief claims erroneously did not

215. On information and belief, Defendant Federal Bureau of Investigation retains copies of electronic files obtained from Ms. Armendariz's digital devices. The Federal Bureau of Investigation's failure to return or destroy the materials constitutes a continuing and ongoing seizure that violates the Fourth Amendment.

216. Ms. Armendariz is entitled to an award of injunctive relief under the Constitution of the United States and 5 U.S.C. § 702 ordering the return or destruction of Ms. Armendariz's digital data.

Dkt. 12. The FAC does not allege the FBI continues to possess Armendariz's electronic devices; rather, it alleges she seeks the return or destruction of the digital *copies* they made (and retain) from those devices. Dkt. 12 at ¶215.

The FBI argues, in relevant part, that its collection of this evidence was lawful under the Fourth Amendment, and even if it wasn't, its retention of electronic copies obtained in violation of the Fourth Amendment does not violate the constitution. Armendariz counters generally that the FBI's continued retention of these copies raises constitutional issues distinct from the lawfulness of the search and seizure, and in any event, other courts have recognized the Fourth Amendment is implicated by a delay in the return of property seized by the government for a criminal

---

identify the City. But the Amended Complaint makes clear throughout that Plaintiffs have stated a claim for injunctive relief against the City for the wrongful retention of Armendariz's files.") This argument is insincere. The FAC expressly indicates it is asserted *only* against the FBI. Dkt. 12 at p.50. To the extent Armendariz now claims it is also asserted against the City, the Court finds it fails to state a plausible claim against the City, and moreover, Plaintiff may not amend the FAC in this regard with her responsive pleading. *See Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1201 n.2 (D. Colo. 2015) ("Plaintiffs cannot amend their complaint by adding factual allegations in response to [a] motion to dismiss.").

investigation.[9] Dkt. 28 at pp.27-28. The Court agrees with the FBI that the Fourth Amendment does not provide a remedy for its ongoing retention of these digital copies, but for reasons not discussed by either party.

What appears to distinguish this case from those cited by the parties is the fact that Armendariz pleaded guilty to a lesser offense—obstructing a peace officer—received a deferred judgment, and successfully completed her six-month unsupervised probation. Dkt. 12 at ¶119. The prior criminal proceedings against her have ended. And Armendariz does not seek monetary damages associated with the FBI's ongoing retention of the copies of her digital media. She instead only seeks injunctive relief in the form of an order for the return or destruction of those copies. *Id.* at ¶216.

Based on these allegations, the Sixth Claim for Relief does not plausibly plead a violation of the Fourth Amendment. The appropriate claim appears to be one for return of property under Fed. R. Crim. P. 41(g) (formerly Rule 41(e) until the rule was amended in 1989). "A cause of action under Rule 41(e) for return of property has been recognized as a valid cause of action in the Tenth Circuit and other federal courts[.]" *Lowrie v. United States*, 558 F. Supp. 1029, 1032 (D. Colo. 1983) (citing

---

[9] While the heading for the Sixth Claim for Relief titles the claim as seeking injunctive relief under the First and Fourth Amendments, the claim expressly alleges only a violation of the Fourth Amendment. Dkt. 12 at ¶215 (alleging "The [FBI]'s failure to return or destroy the materials constitutes a continuing and ongoing seizure that violates the Fourth Amendment.").

cases). "Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint." *United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996) (internal quotations and citations omitted); *see also Clymore v. United States*, 415 F.3d 1113, 1117 (10th Cir. 2005) ("Although Clymore's action is brought pursuant to Rule 41(e), a federal rule of *criminal* procedure, proceedings surrounding the motion for return of property seized in a criminal case are *civil in nature*[.]") (cleaned up; emphases in original); *Allen v. Grist Mill Cap. LLC*, 88 F.4th 383, 394 (2d Cir. 2023) ("[W]hile Rule 41(g) is a rule of criminal procedure, we have also long held that where, as here, a motion under that rule is filed after a criminal proceeding has ended, the district court should construe such a motion as initiating a civil action in equity.") (cleaned up); *U.S. v. Martinez*, 241 F.3d 1329, 1330-31 (11th Cir. 2001) (noting Second, Third, Sixth, Seventh, Eighth, and Ninth Circuits agree that motions for return of property under then Rule 41(e) made after criminal proceedings ended should be treated as civil proceedings for equitable relief).

Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). Prior to its amending in 1989, then Rule 41(e) "provided a method for enforcing the protection against unreasonable search and seizure guaranteed by the Fourth Amendment." 3A Fed. Prac. & Proc. Crim. § 690 (4th ed. 2023). But, as amended, Rule 41(g) now "provides that an aggrieved person

may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it." Fed. R. Crim. P. 41(g) notes to 1989 amendment.

Following the 1989 amendments, the Tenth Circuit has held that Rule 41(g) motions are now "solely for the return of property[,]" drawing a distinction between Fourth Amendment claims seeking redress for an alleged unlawful seizure and claims seeking the return of property (whether or not lawfully seized).[10] *Matter of Search of Kitty's E.*, 905 F.2d 1367, 1370 (10th Cir. 1990) ("Illegality of a search for purposes of Rule 41(e) and the scope of the exclusionary rule have been separated by the 1989 amendments."); *see also United States v. Anh Ngoc Dang*, 559 F. App'x 660, 662 (10th Cir. 2014) ("The issue of whether the deputy marshals violated the Fourth Amendment is distinct from the appropriate disposition of the cash seized."); *United*

---

[10] The partial concurrence in the *Lindell* case, which case Armendariz cites extensively, also draws this distinction. Concurring in part, Circuit Judge Colloton dissented from that portion of the majority opinion that purported to reverse the district court for not balancing the interests of the parties to determine whether the government could justify its continued possession of Lindell's cell phone that it lawfully seized. *Lindell v. United States*, 82 F.4th 614, 623 (8th Cir. 2023). Judge Colloton observed that the majority's "discussion concerns a ruling that was never made on a motion that was never filed. . .. The majority exceeds the proper scope of appellate jurisdiction by purporting to rule on a different dispute concerning the retention of seized property[.]" *Id.* He explained: "If Lindell now wishes to secure a return of his old phone . . . then he may file a straightforward motion for return of property based on the length of retention. The parties may then address the matter in proper briefing and evidentiary presentations[.]" *Id.*

*States v. Giannukos*, No. 15-20016-01-DDC, 2020 WL 6680384, at *2 (D. Kan. Nov. 12, 2020) (Rule 41(g) "governs requests for return of property seized in connection with a criminal investigation."); *Lintzeris v. City of Chicago*, 276 F. Supp. 3d 845, 849 (N.D. Ill. 2017) ("Complaints about the return of property, lawfully seized, do not implicate the Fourth Amendment.").

The Sixth Claim for Relief simply seeks the return or destruction of copies of property seized in connection with a completed criminal case. And in this Court's above-analysis, the Court has found the seizure to be lawful. For these reasons, the Sixth Claim for Relief fails to state a plausible claim for relief under the Fourth Amendment.[11] *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding the validity of a claim is determined by which constitutional right is alleged to have been infringed and then by the specific standard governing that right).

## F.   State Law Claims under Colo. Rev. Stat. § 13-21-131

### 1.   Claim 4 against the United States

During a hearing before the Honorable Magistrate Judge Maritza Dominguez Braswell on December 18, 2023, Judge Dominguez Braswell granted the United

---

[11] The Court considered whether it was appropriate to construe the Sixth Claim for Relief as alleging a claim for return of property under Rule 41(g). But first, Armendariz is represented by counsel, and therefore, the rule requiring the Court to liberally construe a *pro se* litigant's filings does not inure to her. Second, it is not clear to the Court that, even if so construed, it would be fair to then attempt to analyze the allegations as currently pleaded under a Rule 41(g) standard, particularly also where the parties have not briefed or argued the matter under a Rule 41(g) analysis.

States' motion brought under 28 U.S.C. § 2679(d)(1) to substitute itself for Summey on Claim 4. Dkt. 62; *see also* Dkt. 39. The United States generally enjoys sovereign immunity from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). But Congress has waived the United States' sovereign immunity through the Federal Tort Claims Act ("FTCA") for the wrongful act or omission of an employee of the federal government while acting within the scope of their employment, and if a private person would be liable to the claimant under the law of the state where the allegedly wrongful act occurred. *See* 28 U.S.C. § 1346(b)(1). It is the plaintiff's burden to establish subject matter jurisdiction under the FTCA. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

To benefit from the FTCA's waiver of sovereign immunity, claimants must first exhaust administrative processes with the appropriate federal agency before suing in federal court. *See* 28 U.S.C. § 2675(a). Under Section 2675(a), no action may be filed against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." This presentment requirement is jurisdictional, must be strictly construed, and cannot be waived. *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991).

The FAC does not plausibly allege compliance with 28 U.S.C. § 2675(a). True, as she argues, Armendariz had no reason to know Summey was acting as a federal employee. But Supreme Court and Tenth Circuit case law require strict compliance

with the administrative procedures mandated by the FTCA. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (requiring "strict adherence to the procedural requirements" of § 2675(a)); *Bradley*, 951 F.2d at 270 (the FTCA's requirements must be strictly construed); *see also Smith v. United States*, 245 F.3d 790 (5th Cir. 2000) (unpublished table decision) (finding lack of subject-matter jurisdiction where plaintiffs failed FTCA exhaustion because they did not know the defendant was a federal employee); *Miller v. Mayers Mem'l Hosp.*, No. 209CV01687 MCE KJM, 2009 WL 3048690, at *2 (E.D. Cal. Sept. 18, 2009) ("[E]ven assuming that Plaintiff was indeed unaware of Watson's employment status, that lack of knowledge does not excuse compliance with § 2675(a)."); *Chin v. Wilhelm*, 291 F. Supp. 2d 400, 403-04 (D. Md. 2003) (dismissing claims under the FTCA for failure to present an administrative claim despite plaintiffs' lack of knowledge that the officer was a federal agent); *Bigg v. Selective Serv. Sys.*, No. CV-92-2610 (CPS), 1993 WL 547458, at *2 (E.D.N.Y. Nov. 26, 1993), *aff'd*, 28 F.3d 102 (2d Cir. 1994) (dismissing complaint where "plaintiff has not given any indication in his complaint or in his response papers of having met the requirements of section 2675(a). Indeed, plaintiff admits that he did not know that he could (or should) have filed an administrative claim with the Selective Service.").

The out-of-circuit cases Armendariz cites are either at odds with the required strict construction of the FTCA or they also involved issues related to the statute of limitations, which is not an issue here. Because the FAC fails to plausibly allege

Armendariz's compliance with 28 U.S.C. § 2675(a), Claim 4 is dismissed as against the United States.

### 2.      Claims 4 (against Ditzler) and 5 (against Steckler and Otero)

"Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Plaintiff's remaining claims (Claims 4 and 5) arise under a Colorado statute, Colo. Rev. Stat. § 13-21-131. There is no compelling reason to maintain jurisdiction over the state law claims considering this Court's findings pertaining to, and dismissal of, Plaintiff's federal law claims and state law claim against the United States. The Court thus declines to exercise jurisdiction over the state law claims and dismisses them on that basis.[12] 28 U.S.C. § 1367(c)(3).

*      *      *

---

[12] Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, the Court need not address the merits of the arguments concerning those claims. Moreover, the parties have a dispute pending before Judge Dominguez Braswell regarding Plaintiffs' challenge to the United States' substitution for Summey. Even assuming Summey was the proper party to Claim 4, the claim would still be dismissed based on the Court's declination of supplemental jurisdiction.

For the reasons shared above, the Motions to Dismiss at Dkts. 49, 50, 51, and 52, are GRANTED as follows:[13]

1. The First Claim for Relief is DISMISSED without prejudice, against Summey, Ditzler, and the City;

2. The Second and Third Claims for Relief are DISMISSED without prejudice, against Steckler, Otero, and the City;

3. The Fourth and Fifth Claims for Relief are DISMISSED without prejudice;

4. The Sixth Claim for Relief is DISMISSED without prejudice; and

5. The Clerk of Court shall terminate this action.

DATED:     April 10, 2024

BY THE COURT:

S. Kato Crews
United States District Judge

---

[13] The Court does not reach the parties *Bivens'* or other arguments not addressed herein.